17-5732, 17-5828 Cameo LLC v. ITW Deltar IPAC, Division of Illinois Tool Works, Inc. Arguments not to exceed 15 minutes per side. Mr. Miller for the Appellate Cross Appellate. We have counsel here. I saw Mr. Miller in the courtroom earlier today. I'm not seeing him in the courtroom. I can go check. Thank you. Brian, if this goes on for a while, we'll just call it as it is. I'll use the memory test properly. Sir, you can begin. Thank you, Your Honor. I'd like to reserve three minutes rebuttal time, please. Very well. Thank you. May it please the Court, Tom Miller representing Cameo. We're here based on an erroneous instruction that was provided to the jury, which is an error requiring setting aside the jury verdict. The jury verdict states that ITW has the right to terminate the contract if Prime Finish failed to meet the quality standards. The question was posed to the jury, do you find that the plaintiff, Cameo, has proven that Prime Finish met the quality standards? That was an erroneous burden of proof, and it required Cameo to disprove the affirmative defense of ITW. So it would require Cameo to show that Prime had complied with the quality standards and had not defaulted. Is that right? No, Your Honor. Prime only had to prove that the contract existed, that there was a breach, and that it was damaged. I was just trying to recast what you had said. Yes, Your Honor. I wasn't trying to say that that's what the law required. But anyway, we can move on. Yes, sir. So the instructions are very confusing and have the exact reverse burden of proof. How come you didn't propose an instruction that you thought got it right? I did, Your Honor. On the fourth day of trial, I disputed the proposed instruction on the fifth day. I tendered an instruction that was consistent with what I'm arguing today. Okay. Do you have a record cite for that? That's, I think, news to me. Yes, Your Honor. We did cite the record where I made the argument. Is that 147? Instruction number 30? Your Honor, I don't recall the specific. What happened is, over the weekend, you'll see that the judge told us what he intended to instruct. Right. And told us to think carefully over the weekend as to our view of that instruction. I had already argued on day four, as we had the charge arguments, that the burden of proof on the affirmative defense of ITW had to be instructed in the appropriate way. The judge had to instruct the jury that the burden was on ITW. And yes, Your Honor, I did not only object to the proposed instruction, but we tendered. It was actually handwritten in the record. Okay. I did tender. I mean, I haven't seen anything in the record where you proposed an instruction that expressly assigned to ITW the burden of proof on these two points. Yes, Your Honor. I mean, whether the rules required you to do that is another question, but I think it's regrettable that in all this litigation going on for 10 years now, the central issue that you're arguing in the appeal is one in which, at best, the district court got a handwritten instruction that filled out an hour. Your Honor, we had proposed instructions well before the actual trial. And as I recall those instructions, they did not expressly assign to ITW. That is correct, Your Honor. Why not? Is it just something the parties overlooked at that point? I don't believe it was overlooked, Your Honor. I believe that we argued on motions for summary judgment. We had a number of conferences with the court in advance of the trial, which did relate to the burdens of proof. And, in fact, we had arguments with the court in advance of that. We should have and did not, in advance of the trial, have a proposed instruction on the burden of proof on the affirmative defense. But I did argue it on the fourth day, and I did tender a written instruction on the fifth day. That was a Monday, and the reason for the written instruction was lack of clerical help and lack of typing ability, Your Honor. Okay. Well, I mean, I think you've answered my questions on that, and I understand the procedural history there, so I appreciate that. Thank you, Your Honor. If you look at the balance of the instructions, Judge Tatenhoff got it right in a portion of the instructions. For instance, he referred to the product supply agreement, and it says you are further instructed ITW was entitled to terminate the contract with Pram Finish if Pram Finish failed to meet the quality standard. So it seemed to me to be clear under that instruction, and then in the breach of contract instruction to the jury, that the judge did, in fact, recognize that the burden of proof was going to be on ITW to establish that Pram Finish had failed to meet the quality requirements. And, Your Honor, we have cited a number of cases to the court that in Kentucky, that a condition that is subsequent to the entering into the contract has to be raised as an affirmative defense if the party does not want to comply with the terms of the contract. So are you saying that in some of the instructions, the district judge recognized ITW had the burden of proof and in others he didn't? I'm saying that if you read the instructions, he does not make it clear who is going to have the burden of proof. And I believe that the way he has identified the product supply agreement and the right of ITW to terminate, ITW was entitled to terminate the contract, for instance. To me, I believe that he wasn't. What did your written instruction say that you say you tendered on the fifth day? Did it explicitly say ITW has the burden of proof? I did, Your Honor. That was a specific written instruction that I filed into the court record. And, in fact, you'll see Ms. Perilous objected to the late tendering of that instruction in the dialogue that we had with the judge. And this was tendered after what you claim were ambiguous instructions were presented from the court to the parties? The fourth day, Your Honor, we addressed instructions. Okay. And the judge said, and you'll see quoted in my brief, this is something, instructions are very important, this is a good case, we need to get it right, please let me think about it over the weekend and let me know on Monday your position. And that's exactly what we did, Your Honor. We did tender those instructions. You'll see that Ms. Perilous said, why didn't he give it to us earlier? And the reason was I hand wrote it over the weekend after making sure that my argument or believing that my argument was correct. And, Your Honor, it couldn't be more clear in the Supreme Court of Kentucky, the Supreme Court of the U.S., and in the Sixth Circuit that a party seeking to escape from a contract has to prove that there was a condition subsequent that has been met. It goes back to the Javier case, the old Supreme Court case. In Kentucky, it is also absolutely clear that there is a difference between a condition subsequent and a condition preceded. Condition preceded here was that Crown Finish get a paint machine and be in a position to begin production. A condition subsequent was production has started and ITW elects to claim that there is a default. And in that case, ITW must not only plead that affirmative defense but prove that affirmative defense. And the burden, the preponderance of the evidence has to be on ITW because it is the one that wants to exculpate itself from liability on the contract. Improving affirmative defense normally is the burden on the one claiming the exception. Why do you think this new judge made this error? Your Honor, I can tell you that he went back and forth. We argued this specific point quite a while, both on the fourth day and the fifth day. I know that I preserved the record because I've made the comments on numerous occasions that this defense has to be, the burden of proof has to be on ITW. And Your Honor, I don't believe it's just most of the time. Or otherwise, if you enter into a contract and the plaintiff establishes at trial that there was a contract of breach and damages, which Judge Van Tatenhoff found, that's the reason the first instruction is not have we proved that there was a contract. The first instruction was did ITW, is it permitted to exculpate itself from the contract because of a failed production quality? Can you briefly address the other issues? Assuming we rule for you on this, I believe the other side is saying that they nevertheless win because of their motion for judgment as a matter of law. Yes, sir. The primary claim that they're making is that, a primary claim, is that the termination fee is a liquidated damages claim. And that you could not have both a liquidated damages claim and a damage claim for breach. Well, it wasn't a liquidated damages provision. As we pointed out, Cameo provided the paint line, spent over a million dollars in order to allow Prime Finish to engage in the contract with ITW. So there were two concerns that Prime Finish and Cameo had. One, how are we going to get our money back for the paint machine if there is an early termination of the contract? ITW had the right to terminate early under certain circumstances without being in breach and then to pay the termination fee. So the termination fee was in no way intended to be a liquidated damages for the breach. If you read the – it's a very unartful contract, Your Honor. If you can make this concise, because we're in – Yeah, just be prepared when you get up for rebuttal, maybe to address these points. Yeah, why don't we do that? Yes, Your Honor. Thank you. Thank you, Mr. Miller. We'll hear from Ms. Ferris. I may need Mr. Crutcher's assistance with lowering this. Thank you, and may it please the Court. This Court should affirm the jury's verdict in favor of ITW for two reasons. First of all, Cameo caused the very alleged error that it now complains of on this appeal. In its reply brief, it says – and this is a very striking part of this appeal. This Court's reply brief? The reply brief that filed its third brief, the party's third brief to this Court. In the very first page of its reply brief, Cameo says it is not appealing to jury instructions. It is only appealing the verdict, Your Honor. The jury instructions that were given by the Court were jury instructions that Cameo itself proposed, either jointly with ITW or individually. And the verdict form does nothing more than follow those jury instructions. I thought throughout the blue brief, the first brief, that Cameo was arguing in terms of jury instructions. I mean, if they happen to say verdict form in this brief, does that just throw everything out the window and we decide that it was based on, you know, maybe a scrivener's error or something? It is not, Your Honor. The reason why is ITW read their opening brief as saying we are objecting and appealing, both based on jury instructions and the verdict form. In the reply brief, on the very first page, they say Cameo's appeal does not arise from the District Court's failure to give an instruction. The issue on appeal, instead, is Cameo's well-preserved objection to a verdict form. They go on in Section A of the same page to say ITW pretends that Cameo's complaint on appeal concerns just the failure of the District Court to give an instruction. Cameo's error on appeal, however, is that the verdict form was improper. So they have specifically and intentionally said we are not appealing the jury instructions, the jury instructions that they proposed. We'll be sure to ask Mr. Miller about that when he comes back up. But I think going more to the merits, can you give us your sense of the question regarding what the jury was told? Let's put it that way. And for the jury instructions, let's assume that is an issue on appeal. They did invite the error that they're now complaining of. And I think it's important to look at some of the elements in the ruling that show how we got to the point of the District Court giving the jury instructions that it did. First, the jury instructions themselves that were given to the jury. These appear at docket number 224, and there are two jury instructions that were given to the jury that are pertinent to this appeal. First is the jury instruction on preponderance of the evidence. And that is on the sixth page of the jury instructions. And that jury instruction says the plaintiff, Cameo, has the burden in a civil action such as this to prove every essential element of plaintiff's claim, that's the language, plaintiff's claim by preponderance of the evidence. We then go on to instruction number, on page 30, the breach of contract instruction. And this sets forth the elements of Cameo's claim, which in this case was for breach of contract. The elements of the claim included that prime finish did not become insolvent and that prime finish did not fail to meet the quality standard. Those instructions taken together instructed the jury that it was Cameo's burden to prove both of those things as part of its case in chief, as part of its breach of contract. Are these the instructions that were proposed by Cameo early in the case? They were, Your Honor. I mean, I read those to basically, you know, be silent. They don't expressly address whether, who has the burden on, you know, this quality standards and insolvent stuff. And given, you know, that the plaintiff generally has the burden, one could infer, but it wasn't expressed. And meanwhile, Mr. Miller does expressly object near the end of trial. So why isn't that good enough? Well, as I mentioned, the instructions by themselves do place the burden on Cameo. And also, Cameo had filed an objection, a written objection, to ITW's proposed instructions. ITW had proposed instructions that explicitly put the burden of proof on Cameo. And in objecting, this was in docket number 194, Cameo nowhere said, ITW is using the wrong burden of proof. Instead, their only quarrel with that part of the jury instruction, and they objected to the verdict form, too, their only quarrel was that the proposed instructions were, quote, overly repetitive as to the burden of proof. Cameo also said they— to the district court before trial. I mean, let's kind of hypothetically stipulate to that. Yet again, I mean, he does object, I guess, on Friday before trial ends or right before the trial ends. The district court was apprised of the issue. The district court had time to think about it and address it. And I'm struggling—I'm sympathetic to the point you're making that, you know, why is this coming up at 1158, you know, so to speak? But at the same time, it seems like he complied with Rule 51 and civil rules. Is that—I mean, did he comply with Rule 51? Did Rule 51 require more? Rule 51 did require more. And the reason why is there are some circumstances where you can simply object and you can preserve the objection or the appeal based on that. So let's say, for example, the court is going to give a jury instruction that you think should never be given. It's just impermissible. Let's say it's on an affirmative defense and you just don't think there's evidence to support that defense. You simply object to that jury instruction and you can preserve that issue. However, if what you want the court to do is to give a different instruction or a different verdict form, then you need to actually submit the instruction or the verdict form that you wish to have given, none of which happened in this instance. What about the handwritten instructions? Was that not a tendering of a different instruction? The handwritten instructions are not in the record other than in the transcript of the proceedings, as I recollect. They were never filed. So there is a reference during the—on the last day of trial  to the court. But those do not appear, to my understanding, in the record for this court to review on appeal. What we do have is their written objection that they filed, which only objects to the verdict form. It does not object to the jury instruction. Well, Judge Goldman had a question. No, I was just going to say, I mean, do you dispute the wording of the handwritten instruction that was handed on the fifth day of trial? I'm not sure what the wording is. I went back through last night the transcript of that part of the colloquy about jury instructions, and it's not entirely clear what is being proposed as in the form of an alternative jury instruction. So particularly for the jury instructions, what's being referred to is, well, see the written objection that we filed on the verdict form. But there's nothing specific to say, Judge, let me read to you exactly what I want this jury instruction to say. So Rule 51 requires that. Correct. Which, you know, I mean, which sub-provision of Rule 51 would you say? Could I grab my notebook, Your Honor? Yes, please. That's fine. So the subsection of Rule 51... would be subsection 51C, which deals with how to make objections. And subsection 1 deals with if you simply are making the subsection, and actually in section D it says that a party may assign as error an instruction, an error instruction actually given if they properly objected, or, and this is the pertinent part, a failure to give an instruction if they properly requested it. And that goes to if you want an alternative instruction to be given, then you need to actually submit that, and there are a number of Sixth Circuit cases we've cited in our briefing that reiterate just that point. You need to actually tender the instruction, or in this case the verdict form, that you wish to have given. One thing to keep in mind going to your question on the timing of this. What provision would that be, C1? It is D, Your Honor, 51D. D, which part of D? I have the... Subsection 1B. Okay, thank you. That's it for the rules. Good. I'm glad I brought that up to you. I wanted to address your question about the timing a little bit more as well, because the very first time that anything, that verdict shifting, came out of Cameo Smith was the day we gave closing argument in this trial, which is the Monday of the 2nd. And you say they took advantage of presenting first, if I recall. Yes, and also there was something else that happened over that intervening weekend, and you'll see it in the record. It appears at docket number 215. That was a stipulation that the parties filed. And part of that stipulation was that the parties were going to not call certain witnesses at trial. One of those witnesses was ITW's quality expert. And the stipulation said, in reliance on that stipulation, ITW was going to cancel its expert's travel plans. Travel plans would be out there at trial on Monday, which was the last day of evidence. So this was before trial, right before trial? This was the intervening weekend between the first week of trial and the second week. Had they raised the objection by this time? They had not. Okay, so at some point during the trial, in other words, you all agreed we're not going to fly out the IT quality person. Correct. Because you think you don't have to prove that point, and they don't seem to be doing it themselves. That's correct. That happened on Saturday, and it was two days later on Monday that the issue of burden was first raised again on the very last day of trial when we were giving closing arguments that day to the jury. Under those circumstances, the trial court rightfully decided that it was too late, and also the court carefully looked for cases and spent time looking for cases to support the burden-shifting argument that they were asking for and could not find cases. Was that a different weekend retirement? So there's a stipulation that we're not going to bring in this quality person, and it's a week later that the issue gets raised? Two days later on Monday. Okay. Did you tell the district court, hey, you know, we can't be putting the burden on us at this point because we didn't fly our expert out in reliance on the burden as it seemed to be? We did not raise that specific issue of prejudice, but the trial court, in talking about this issue and saying that it was not going to adopt the burden-shifting that was proposed by Cameo, said part of the reason was because of the prejudice that we had already gone through the entire trial. People had been questioned based on an assumption and an understanding of who bore the burden, and it was now too late to try to redo that, to un-ring that particular bell. Although I spoke with the district court, and I said, you know, I think Cameo is right on the burden of proof. I'm going to leave you an extra day to bring your expert in to put on the proof that we've done. It could have been done, but then all these witnesses, almost every other witness had already testified and testified under the assumption, again, that one party hears the burden of proof and one party does not. And so there's a way to ameliorate the prejudice but not completely eliminate it. So what were the district court's instructions for presentation of post-jury instructions? Was there a scheduling order or something before the trial that said before the trial the parties need to agree, try to agree on jury instructions? Yes, there was, Your Honor. The parties initially submitted jury instructions on April 25th of 2017, and then the court ordered that following rulings on summary judgment, the parties would submit any additional or different jury instructions, and those were submitted on May 8th of 2017. And how much in advance of the trial were those, that second set of jury instructions submitted? Those would have been submitted approximately two weeks before the trial. And this assumption about who bore the burden on the quality and insolvency business, that was based upon their instruction that did not expressly push it off to you. And their acknowledgment, their express acknowledgment in responding to our instructions, which very explicitly put the burden of proof on them to say the only issue we have with burden is that you're saying it too much and therefore the jury may be confused in the thinking that the standard is something more than a preponderance. And those combined were the reasons why everybody, including the court, believed that the burden should be on Cameo, and the burden should have been, because these were promises that Prime made under the contract that it did not fulfill. All right. So we ask that this court affirm. Thank you. Thank you for your argument. We'll hear from Bob. Thank you, Your Honor. Because this case was back in front of a different judge for the third time, there were scheduling orders that had to be determined and then were revised. But after both sides filed jury instructions, and I've argued this on page 11 of our brief, we said you're further instructed that ITW was entitled to terminate the contract with Prime Finish earlier than 48 months only if Prime Finish failed to meet the quality standard. We did not refer specifically to burden of proof or at all. I mean, that doesn't refer at all to burden of proof. That's correct. But it does say Prime Finish, and it says ITW can terminate if certain circumstances. Right. I mean, it's laying out a substantive standard, but it doesn't say anything about who has to prove that it was met or not met. That's correct, Your Honor. Well, what about, I mean, the stipulation where they didn't bring out an expert who testified to this? Well. I mean, that's a serious thing. What happened was I got a call on Saturday. I had, my next witness was supposed to testify, who was going to testify regarding the manufacturing process and the quality. I'd already put on two expert witnesses, and there had been a volume of evidence that there was a quality, the quality was being met. There was also a lot of evidence that she put on from witnesses who said the quality standard had not been met. And we even took witnesses out of order, I did, allowed her to, to accommodate those witnesses. So I get a call, and none of this is in the record, I don't believe, Your Honor, but I got a call. Is the stipulation in the record? The stipulation is in the record, but I got a call. We were scheduled for four days. This was going to be the sixth, the fifth day of trial, and so both of us were trying to determine how to minimize the number of extra days. But her expert was going to fly in. I said it wouldn't be necessary, but we traded. I won't put on my witness, and then you won't put on your witness about quality. There is no doubt that if she had raised this at the bench, that Judge Takeoff would have given an extra day. We were already in the second extra day of trial, Your Honor. And then when I was arguing on the instructions, you will see that I specifically stated, CAMEO does not bear the burden of establishing that ITW did not have grounds for early termination. Instead, ITW bears the burden of establishing that it did. Okay, we're going to have to end it there. I appreciate your argument very much. Melissa, further questions? Thank you, sir. Thank you, Your Honor. Thank you both. Have you all talked to the Mediation Office by any chance in this case? I mean, ten years, it's a million bucks. I don't know if there's a fee-shifting provision here, but it's just money. Have you all talked with those people at all? Your Honor, I came on to this case last year, and at that time there had already been one unsuccessful mediation. After I came on the case, we had another mediation, again unsuccessful. But we have formally mediated the case twice. Okay. I would, of course, in my position it would be logical for me to agree to a mediation, but I would certainly welcome the opportunity. Okay. I was just curious about that. Thank you both. Thank you, Your Honor. The case will be submitted. Court may call the next time.